[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Wayside Furniture Shops, Inc. ("Wayside") brings this action against the defendant Franklin Construction Company, Inc. ("Franklin") alleging that Franklin purchased certain furnishings from the plaintiff but has failed to pay the balance due of $25,223.82. (This action was withdrawn against the first-named defendant, Stephen Tagliatela, prior to trial.) Franklin denies that any monies are due Wayside and has filed a counterclaim against Wayside, alleging that Wayside breached the agreement between the parties and that Wayside's conduct was unfair and deceptive within the meaning of the Connecticut Unfair Trade Practices Act ("CUTPA"), Connecticut General Statutes42-110a et seq.
Franklin is in the real estate development business and in the fall of 1989 was constructing an oceanfront condominium at Saybrook Point in Old Saybrook. Louis Tagliatela Sr. was a principal and officer of Franklin. In the fall of 1989, he called Veronica Virgulto, an interior designer and salesperson at Wayside, and asked her if she would like to furnish two model units at the condominium under construction in Old Saybrook. Virgulto had furnished Tagliatela's boat a few years earlier and he and his wife had been pleased with her work. CT Page 4011
Virgulto met Tagliatela and his wife at the condominium and they visited the model units. Tagliatela indicated that he wanted the units to be completely furnished except for floor coverings, which Franklin would provide. Virgulto agreed to furnish both units and told Tagliatela that she thought that $30,000 was a fair budget for each unit. Tagliatela indicated he only wanted to spend $25,000 per unit. Both prices were discussed. The parties now disagree as to whether the final price agreed upon was $25,000 or $30,000.
Virgulto returned to Wayside and began selecting furniture and window treatments for the units. After she had made some selections, Virgulto scheduled a meeting at the Wayside store with Tagliatela. His wife and daughter Trish, a vice president of Franklin, also attended the meeting. Most of Virgulto's choices were approved at this or later meetings. At the first meeting, however, Mrs. Tagliatela brought Virgulto a newspaper article concerning decorating condominium units. She showed Virgulto a large photograph accompanying the article and stated that she very much liked the window treatment shown because it provided an open view to the outside. She reminded Virgulto that they did not want the condominium windows fully covered because the ocean view was a major selling point for the condominium units.
After Virgulto had made furniture selections, she then chose window treatments. She telephoned Tagliatela and told him she was ready to have the drapery choices reviewed. Tagliatela sent his daughter Trish to review Virgulto's choices. Trish approved the draperies and signed a number of purchase orders.
Although the condominium units were originally scheduled for completion in January 1990, completion was delayed several times. After a February telephone call in which delays were reported, Tagliatela next called Virgulto in March. He asked her at that time if he could cancel the furniture and window treatment orders because he had decided to rent the condominium units rather than selling them because of the decline in the condominium market. Virgulto told him the orders could not be cancelled and referred Tagliatela to her supervisor.
Tagliatela called Virgulto next in April. He asked whether the furniture ordered for Old Saybrook could be used in another condominium development of his in North Haven called Rosewood. Virgulto looked at Rosewood and then called Tagliatela to tell CT Page 4012 him that the furnishings could be used there. Two changes were necessary. Because the Rosewood unit was larger, some additional furniture was needed. Also, the draperies would need to be altered because of different window sizes. Tagliatela told Virgulto to work with his son Louis Jr. at Rosewood.
In May the furnishings ordered for one of the units in Old Saybrook were installed in the model unit at Rosewood. In addition, Wayside provided furnishings at the request of Franklin to convert a room used as an office at Rosewood to a bedroom. The cost of these additional furnishings was approximately $3,500. Tagliatela was pleased with the outcome at Rosewood and told Virgulto so.
Representatives of Wayside continued to press Tagliatela to arrange delivery of the furnishings for the second model unit in Old Saybrook. He knew that Wayside would not permit him to cancel the order, but he did not hasten to accept delivery knowing that at some later point "we would get to it."
The many purchase orders which form the basis of Wayside's claim were made exhibits at trial, divided into two sets. The first set of purchase orders, a total of $39,613.42, represents furnishings actually delivered and installed in the condominium unit at Rosewood. Against these invoices, Wayside shows payments and credits totalling $38,913.66, leaving a balance of $699.76. The second set of purchase orders represents the undelivered furnishings for the second model unit in Old Saybrook, a total of $28,052.06.
The defendant filed no special defenses directed to plaintiff's complaint. The defendant denied the material allegations of the complaint and also raised the defense of the statute of frauds, Connecticut General Statutes 42a-2-201. Under our practice rules, the defense of the statute of frauds can be raised under a simple denial in the answer. Practice Book 164.
Connecticut General Statutes 42a-2-201(1) provides that contracts for the sale of goods for the price of $500 or more are not enforceable unless there is a writing sufficient to show a contract for sale and it is signed by the party against whom enforcement is sought. Franklin contends that neither requirement is satisfied with respect to the orders in question. CT Page 4013
Several of the purchase orders in the set representing delivered merchandise are for amounts less than $500 and by its terms, the statute of frauds does not apply. Several also are signed by Patricia Tagliatela and defendant disputes her authority to have signed on behalf of Franklin. However, Louis Tagliatela testified that in 1989 his daughter Trish and son Stephen were vice presidents of Franklin and son Louis Jr. was secretary. The court finds that Patricia Tagliatela as an officer of Franklin was authorized to sign the purchase orders. Tagliatela also signed photocopies of four of the purchase orders. Virgulto brought him the photocopies to sign because she could not remove the original paperwork from the Wayside store. These purchase orders also are valid. The remaining purchase orders for the delivered merchandise are not signed by anyone on behalf of Franklin. On the purchaser's signature line, Virgulto wrote the word "phone" together with a date to signify that Tagliatela approved the order by telephone on that date.
Franklin claims first that these purchase orders do not adequately identify the merchandise sold. This claim is without merit. The purchase orders contain a brief verbal description of the merchandise ("sofa," "end table," etc.) plus detailed numerical identifications for each item. Some of the identification numbers contain as many as nineteen digits.
Franklin also claims that some of the unsigned purchase orders are unenforceable under the statute of frauds because they are not signed by anyone on behalf of Franklin. However, Connecticut General Statutes 42a-2-201 provides in sub-section (3) for several situations in which an unsigned contract will be enforced. The contract is enforceable "with respect to goods . . . which have been received and accepted as provided by42a-2-606."
The court finds that the furnishings delivered to Rosewood in May 1990 were accepted by Franklin. These furnishings were accepted because the buyer, Franklin, did acts "inconsistent with the seller's ownership." Connecticut General Statutes42a-2-606(1)(c). In retaining possession of the merchandise and using it for months in the Rosewood model unit without complaint, Franklin acted inconsistently with any claim that Wayside still owned the merchandise. It was not until December 19, 1990, seven months after delivery of the furnishings, that Franklin made any claim that Wayside had breached any obligation on its part. On that date, Tagliatela wrote a letter to Wayside complaining that CT Page 4014 Wayside exceeded the agreed upon per unit price and that some of the merchandise was "not as promised." He requested cancellation of "all outstanding shipments" and the return of a credit balance in the account.
Franklin claims that this letter constituted a rejection of the goods. However, the letter does not address the merchandise already delivered to Rosewood. It refers only to "all outstanding shipments" and seeks return of a credit balance in the account. It does not purport to reject the goods already delivered and paid for nor does it request the return of payments made for the delivered merchandise. Moreover, this attempted rejection came too late. Connecticut General Statutes 42a-2-602
provides that rejection of goods must be "within a reasonable time after their delivery. . ." Seven months is far beyond a reasonable time within which to reject the furnishings. Failure to make an effective rejection under Connecticut General Statutes42a-2-602 also constitutes another mode of acceptance of the furnishings under Connecticut General Statutes 42a-2-606(1)(b). The purchase orders for the delivered furnishings are enforceable and Franklin is liable for the balance due of $699.76.
The second set of purchase orders admitted at trial represents furnishings and window treatments for the second model unit at Old Saybrook. Franklin never took delivery of these items and they remain in the Wayside warehouse. Franklin contends that these purchase orders also are unenforceable under the statute of frauds, Connecticut General Statutes 42a-2-201.
Among this set of purchase orders are several which were signed by Trish (Patricia) Tagliatela: #034058 for $59.81, #034059 for $248.13, #034061 for $1,575.93, #034062 for $419.88, #034064 for $1,097.44, #034067 for $946.96, #034070 for $461.22, #034071 for $1,827.40, and #034072 for $461.78, a total of $7,098.55. These purchase orders are enforceable because of Trish's authority as a vice president of Franklin. (Several of these purchase orders are also enforceable because they are smaller in amount than the $500 statute of frauds threshold.) Purchase order #036068 is enforceable because of the price, $104.60, as is #048135 for $146.02. One of the remaining purchase orders contains "OK Trish Tagliatella" [sic] on the purchaser's signature line. This is not the signature of Trish Tagliatela, but represents evidence of her verbal approval by telephone. This order and the remaining purchase orders are not signed by anyone on behalf of Franklin and are therefore CT Page 4015 unenforceable under the statute of frauds.
With respect to the $7,349.17 in purchase orders which are enforceable under the statute of frauds, Franklin contends that it never accepted these goods and that it rejected them through its letter dated December 19, 1990. The letter alleges two deficiencies with respect to Wayside's performance: first, that Wayside did not deliver "two complete units within the agreed upon price" and secondly, that the items supplied "are not as promised."
Franklin contends that agreement was reached between Tagliatela and Virgulto that the model units would be furnished for $25,000 each. Plaintiff contends that although $25,000 was discussed, Virgulto did not agree to it and insisted on $30,000 per unit, to which Tagliatela replied, "OK, we'll see." Evidence at trial shows that Virgulto left the first meeting believing there was agreement to $30,000 per unit. Notes from her file read "Budget $30,000 each unit." Tagliatela left the meeting believing they had agreed to $25,000 per unit. He used $25,000 as the basis for calculating the deposit check which he later gave to the plaintiff. On these facts, the court cannot find that there was agreement that the units would be furnished for $25,000 per unit.
The defendant's second claim is also unavailing. The defendant contends that the draperies selected by Virgulto were inappropriate for condominium use because they did not close so as to cover the window completely and provide privacy. It is true that the draperies selected were panels only and did not close in order to provide privacy. However, in choosing such draperies, Virgulto was guided by the newspaper article and photograph given to her by Mrs. Tagliatela. The draperies shown in that photograph are panels which do not close to provide privacy. Tagliatela claims that privacy is necessary in condominium living, that draperies which close are a necessity and that Virgulto should have known this. Both parties conceded that there never was any actual discussion about whether the draperies should close. Neither side raised any question about it. The court cannot find on this evidence that the draperies failed to conform to the contract. See Connecticut General Statutes 42a-2-601. The purchase orders signed on behalf of Franklin specified draperies which did not close because they were based on the photograph supplied by Mrs. Tagliatela. There is no basis for rejection of the draperies. CT Page 4016
The plaintiff claims that with respect to the enforceable purchase orders for undelivered merchandise, the failure to effectively reject the furnishings means that the goods were accepted, Connecticut General Statutes 42a-2-606(1)(b), and that the plaintiff is entitled to damages equal to the price of the goods under Connecticut General Statutes 42a-2-709. The defendant, however, claims that the goods were not accepted and that the plaintiff's damages are limited to the difference between the market price and the unpaid contract price as provided in Connecticut General Statutes 42a-2-708.
The court finds that the undelivered goods at a total price of $7,349.17 were accepted by Franklin. These goods were available for delivery to Franklin beginning in March, 1989 and Wayside tendered the goods several times. The last tender was made in a letter from Wayside to Franklin dated October 15, 1990. By letter dated December 19, 1990, over two months later, Franklin seeks cancellation of "all outstanding shipments" because of Wayside's alleged breach with respect to the per unit price and the failure of the draperies to close completely over the window. Franklin contends that that letter constituted effective rejection of the undelivered goods. The court has already found that Franklin's claim of breach by Wayside is without merit. The court further finds that the attempted rejection was untimely, coming over two months after Wayside's last tender and some nine months after initial tender. Franklin had the opportunity to inspect the undelivered goods from March until December. Franklin failed to make an effective rejection of the goods, thereby accepting them. Connecticut General Statutes 42a-2-606(1)(b). Because the goods were accepted, Wayside may recover the price under Connecticut General Statutes42a-2-709(1)(a). (It must be noted that even if the goods were not accepted, Wayside would be entitled to recover the price under Connecticut General Statutes 42a-2-709(1)(b) because the bulk of these goods were specially ordered draperies for which, a Wayside witness testified, there is no resale market at all.) Wayside should take heed that a seller suing for the price must hold the goods for the buyer unless resold in accordance with Connecticut General Statutes 42a-2-709(2).
The defendant is found liable for the balance due for the delivered merchandise, $699.76, and the price of the enforceable purchase orders for the undelivered merchandise, $7,349.17, a total of $8,048.93. CT Page 4017
The first count of Franklin's counterclaim seeks damages for Wayside's alleged breach of agreement with Franklin. The first alleged breach is that the purchase orders for the furnishings exceeded the agreed upon price of $25,000 per unit. The court has already found that the defendant failed to sustain its burden of proof with respect to this claim. The second alleged breach is that the furnishings delivered were "not complete," that is, that they would not completely furnish a model unit. This allegation was not proven by a fair preponderance of the evidence at the trial.
The final allegation of breach by the plaintiff is the failure of the draperies to close and fully cover the window. The court has found this claim without merit because of plaintiff's reliance on the newspaper photograph provided by Mrs. Tagliatela and the fact that defendant signed purchase orders without inquiring as to whether the draperies would close. The defendant failed to sustain its burden of proof with respect to the first count of the counterclaim.
The second count of the counterclaim alleges that the plaintiff's same alleged breaches constitute unfair or deceptive acts or practices under CUTPA. In its trial brief and at oral argument, Franklin claimed that Wayside's billing practices, discount policies, pricing and other actions were unfair and deceptive within the meaning of Connecticut General Statutes42-110b. However, the actual allegations of the second count of the counterclaim are limited to the same three alleged breaches which form the basis of the first count of the counterclaim. The defendant is limited to the allegations of its counterclaim. No attempt was made to amend the counterclaim. The plaintiff's failure of proof on the first count of the counterclaim is dispositive of the second count as well.
Judgment is entered for the plaintiff on the complaint for $8,048.93 plus costs. Judgment is entered for the plaintiff on the counterclaim.
Christine S. Vertefeuille, Judge CT Page 4018